## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | |
|---|---|
| PATRICIA AIELLO; DOUG BORK; CATHY CITRO; JENNIFER DANCHSIN; RICHARD DANCHSIN II; DANIEL DRAUS; MARY DYER; BETH FITZPATRICK; BRANDIE FRANKLIN; GUILLERMINA GARCIA; TERESA GIROLAMO; ANNA GRAY; HEATHER GRAY; BONNIE GREER; ANGELICA HARTMANN; JEFFERY HARTMANN; SHARON HEIDEN; SANDY IPPOLITO; SYLVIA IWANIEC; VERNESSA JACKSON; ANNIE JOHNSON; KIM KERR; MARY ANN KIRCHOFF; LORETTA KLAFETA; CANDACE KOWALCZYK; JUSTINE KRULAS; JOHN LYNCH; LILA LYNCH; GARY MARK; JASON MARK; MARY ANN MCGRAW; DEBBIE MCSHANE; ADRIANA MOLDOVAN; HOWARD MOSTYN-BROWN; MICHELLE O'GRADY; ESTHER PEDDRICK; JENNIFER ROSKOS; GUS SILAGI; ASHLEY TURNER; LORI UHRHAMMER; and STEVE WERNECKE, individually and on behalf of a class of those similarly situated, | **Case No.:** _____ <br><br> **Judge:** _____ |
| Plaintiffs, | |
| v. | |
| KUBE, LLC, a Florida limited liability company; SCOTT CARSON; JOHN HUGHES, | |
| Defendants. | |

## **COMPLAINT**

1

## INTRODUCTION

1. Plaintiffs, by and through their attorneys, bring this opt-in collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*, and Fed. R. Civ. P. 23 class action pursuant to the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/ *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/5, seeking recovery of months' worth of promised wages for work performed, which Defendants, their employers, have refused to pay.

## PARTIES

2. Defendant KUBE, LLC is a Florida limited liability company with a principal place of business at 10632 Conifer Mountain Road, Conifer, Colorado 80433. At all times material hereto, Kube was engaged in interstate commerce.

3. Defendant SCOTT CARSON is a natural person and a Managing Partner overseeing the CE program at Kube.

4. Defendant JOHN HUGHES is a natural person and a Managing Partner overseeing the CE program at Kube.

5. Defendants are covered under the FLSA. On information and belief, Kube's annual gross revenue was at all times material hereto in excess of $500,000 per annum, and/or Plaintiffs and those similarly situated, by virtue of working in interstate commerce, otherwise satisfy the FLSA's requirements.

6. On information and belief, Kube disregarded corporate formalities, resulting in the revocation of its authorization to do business within the State of Illinois, and failed to maintain adequate capitalization to satisfy its outstanding obligations, and therefore the corporate veil should be pierced as to Defendants Carson and Hughes.

7. Plaintiff PATRICIA AIELLO is a natural person and a resident of the State of Illinois. Ms. Aiello is owed in excess of $2,400.00 in unpaid wages and an additional $50.00 in unreimbursed expenses.

8. Plaintiff DOUG BORK is a natural person and a resident of the State of Illinois. Mr. Bork is owed in excess of $1,620.00 in unpaid wages.

9. Plaintiff CATHY CITRO is a natural person and a resident of the State of Illinois. Mr. Bork is owed in excess of $353.89 in unpaid wages.

10. Plaintiff JENNIFER DANCHSIN is a natural person and a resident of the State of Illinois. Mrs. Danchsin is owed in excess of $1,320.00 in unpaid wages.

11. Plaintiff RICHARD DANCHSIN II is a natural person and a resident of the State of Illinois. Mr. Danchsin is owed in excess of $1,680.00 in unpaid wages.

12. Plaintiff DANIEL DRAUS is a natural person and a resident of the State of Illinois. Mr. Draus is owed in excess of $1,564.29 in unpaid wages.

13. Plaintiff MARY DYER is a natural person and a resident of the State of Illinois. Ms. Dyer is owed in excess of $860.00 in unpaid wages.

14. Plaintiff BETH FITZPATRICK is a natural person and a resident of the State of Illinois. Ms. Fitzpatrick is owed in excess of $1,260.00 in unpaid wages.

15. Plaintiff BRANDIE FRANKLIN is a natural person and a resident of the State of Illinois. Ms. Franklin is owed in excess of $498.93 in unpaid wages.

16. Plaintiff GUILLERMINA GARCIA is a natural person and a resident of the State of Illinois. Ms. Garcia is owed in excess of $5,300.00 in unpaid wages.

17. Plaintiff TERESA GIROLAMO is a natural person and a resident of the State of Illinois. Ms. Girolamo is owed in excess of $3,710.00 in unpaid wages.

18. Plaintiff ANNA GRAY is a natural person and a resident of the State of Illinois. Ms. Gray is owed in excess of $620.00 in unpaid wages.

19. Plaintiff HEATHER GRAY is a natural person and a resident of the State of Illinois. Ms. Gray is owed in excess of $480.00 in unpaid wages.

20. Plaintiff BONNIE GREER is a natural person and a resident of the State of Illinois. Ms. Greer is owed in excess of $2,670.23 in unpaid wages.

21. Plaintiff ANGELICA HARTMANN is a natural person and a resident of the State of Illinois. Mrs. Hartmann is owed in excess of $600.00 in unpaid wages.

22. Plaintiff JEFFERY HARTMANN is a natural person and a resident of the State of Illinois. Mr. Hartmann is owed in excess of $2,920.00 in unpaid wages.

23. Plaintiff SHARON HEIDEN is a natural person and a resident of the State of Illinois. Ms. Heiden is owed in excess of $300.00 in unpaid wages.

24. Plaintiff SANDY IPPOLITO is a natural person and a resident of the State of Illinois. Ms. Ippolito is owed in excess of $2,535.84 in unpaid wages.

25. Plaintiff SYLVIA IWANIEC is a natural person and a resident of the State of Illinois. Ms. Iwaniec is owed in excess of $2,631.81 in unpaid wages.

26. Plaintiff VERNESSA JACKSON is a natural person and a resident of the State of Illinois. Ms. Jackson is owed in excess of $1,440.00 in unpaid wages.

27. Plaintiff ANNIE JOHNSON is a natural person and a resident of the State of Illinois. Ms. Johnson is owed in excess of $300.00 in unpaid wages.

28. Plaintiff KIM KERR is a natural person and a resident of the State of Illinois. Ms. Kerr is owed in excess of $4,537.04 in unpaid wages.

29. Plaintiff MARY ANN KIRCHOFF is a natural person and a resident of the State of Illinois Ms. Kirchoff is owed in excess of $3,382.50 in unpaid wages.

30. Plaintiff LORETTA KLAFETA is a natural person and a resident of the State of Illinois. Ms. Klafeta is owed in excess of $1,920.00 in unpaid wages.

31. Plaintiff CANDACE KOWALCZYK is a natural person and a resident of the State of Illinois. Mr. Kowalczyk is owed in excess of $1,680.00 in unpaid wages.

32. Plaintiff JUSTINE KRULAS is a natural person and a resident of the State of Illinois. Ms. Krulas is owed in excess of $1,955.32 in unpaid wages.

33. Plaintiff JOHN LYNCH is a natural person and a resident of the State of Illinois. Mr. Lynch is owed in excess of $2,501.00 in unpaid wages and an additional $90.78 in unreimbursed expenses.

34. Plaintiff LILA LYNCH is a natural person and a resident of the State of Illinois. Mrs. Lynch is owed in excess of $2,812.05 in unpaid wages and an additional $148.70 in unreimbursed expenses.

35. Plaintiff GARY MARK is a natural person and a resident of the State of Illinois. Mr. Mark is owed in excess of $950.00 in unpaid wages.

36. Plaintiff JASON MARK is a natural person and a resident of the State of Illinois. Mr. Mark is owed in excess of $950.00 in unpaid wages.

37. Plaintiff MARY ANN MCGRAW is a natural person and a resident of the State of Illinois. Ms. McGraw is owed in excess of $3,860.00 in unpaid wages.

38. Plaintiff DEBBIE MCSHANE is a natural person and a resident of the State of Illinois. Ms. McShane is owed in excess of $717.14 in unpaid wages.

39. Plaintiff ADRIANA MOLDOVAN is a natural person and a resident of the State of Illinois. Ms. Moldovan is owed in excess of $5,200.00 in unpaid wages.

40. Plaintiff HOWARD MOSTYN-BROWN is a natural person and a resident of the State of Illinois. Mr. Mostyn-Brown is owed in excess of $2,457.00 in unpaid wages.

41. Plaintiff MICHELLE O'GRADY is a natural person and a resident of the State of Illinois. Ms. O'Grady is owed in excess of $840.00 in unpaid wages.

42. Plaintiff ESTHER PEDDRICK is a natural person and a resident of the State of Illinois. Ms. Peddrick is owed in excess of $263.00 in unpaid wages.

43. Plaintiff JENNIFER ROSKOS is a natural person and a resident of the State of Illinois. Ms. Roskos is owed in excess of $2,700.00 in unpaid wages.

44. Plaintiff GUS SILAGI is a natural person and a resident of the State of Illinois. Ms. Silagi is owed in excess of $2,040.00 in unpaid wages.

45. Plaintiff ASHLEY TURNER is a natural person and a resident of the State of Illinois. Ms. Turner is owed in excess of $216.00 in unpaid wages.

46. Plaintiff LORI UHRHAMMER is a natural person and a resident of the State of Illinois. Ms. Uhrhammer is owed in excess of $1,502.35 in unpaid wages.

47. Plaintiff STEVE WERNECKE is a natural person and a resident of the State of Illinois. Mr. Wernecke is owed in excess of $1,800.00 in unpaid wages.

**JURISDICTION AND VENUE**

48. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 because it an action arising under the laws of the United States, namely 29 U.S.C. §201 *et seq.*

49. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C §1367 because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy.

50. Venue is proper in this District because a substantial number of Plaintiffs reside in this District, Defendant maintained an office in this District during the relevant time period, a

substantial proportion of the events giving rise to the action occurred in this District, and substantial proportions of the relevant evidence and witnesses are located in this District.

## CAUSE OF ACTION

### A. Background

51. During the relevant time period, Kube, LLC, which does business under the name "Kube Marketing," was a self-styled "consumer educator" in the business of promoting consumer products – primarily alcohol – in supermarkets and other retail outlets across at least five states.

52. To this end, Defendant placed "consumer educator" ("CE") employees in supermarkets and retail outlets throughout the states of Illinois, Florida, Kentucky, Texas, and Colorado, for the purposes of offering free samples of various products to shopping consumers, and otherwise marketing and promoting such products.

53. During the relevant time period, Defendant employed more than 700 "consumer educator" employees in the State of Illinois alone. Plaintiffs are a substantial portion of those "consumer educator" employees.

54. The "consumer educator" position was a part-time position, which required employees to report to a specific retail location at a specific time, and then promote client brands at that location, usually for a period of three to four hours.

55. Wages were to be paid hourly to CE employees, with contracted-for rates varying from $20 per hour to $30 per hour depending upon the particular employee.

56. CE employees were able to manage their wages via an online system operated by Kube through its website, which permitted them to view hours and events worked and pending wages owed, and facilitated direct deposit via a service called "Payment On Demand."

### B. Misclassification of Employees as Independent Contractors

57. Despite Kube's misclassification of its "consumer educators" as independent contractors, Kube exercised such direct control over the time, place, and manner in which the work was performed that such "consumer educators" meet the definition of employees as defined by 29 U.S.C. §201 *et seq.* and related regulations.

58. "Consumer educator" "brand advocate teams" were scheduled solely by Kube, and assigned through the online portal, with employees required by Kube to appear at particular times in particular places, according to a pre-determined "event" schedule.

59. While on duty, CE employees were required to adhere to a strict dress code, including a mandatory and distinctive blue tie, "all black, contemporary business casual attire" and "clean, stylish black closed toe shoes."

60. For "on premise events," Kube managers were authorized to require the wearing of full uniforms, and women were required to "have hair and make up done."

61. Kube's dress code banned a number of different forms of clothing, including jeans, overalls, painter pants, shorts, muscle shirts, t-shirts, gym shoes, flip flops, tank tops, mid-drift shorts, and "inappropriate low cut shirts for women."

62. Kube also required clean, neatly trimmed facial hair, and banned visible tattoos and visible piercings other than ear piercings.

63. Kube imposed a detailed 7-day plan for preparation of marketing events, which CE employees were required to adhere to. The mandatory preparation plan required in excess of three additional hours of work per event. Plaintiffs were not compensated for this time.

64. For every event, Kube required a particular set of at least twenty items' worth of supplies, including branded Kube materials, which were provided to the CE employees and

which CE employee training materials state were "important" in order to "maintain conformity across the board."

65. Kube required CE employees to arrive prior to particular start times "in case of traffic and weather delays," and informed CE employees that they "must be prepared to serve [their] first customer at the scheduled start time of [their] event."

66. Kube required CE employees running "behind" for an event to inform management "ASAP," to apologize in the event of lateness, and to "stay longer to make up for the time."

67. CE employees were expected to work closely with management and account employees to determine where they would be required to set up at a particular premises.

68. Kube imposed particular guidelines on CE employees for the service of alcoholic products, including requirements for chilling wine and mixing cocktails using specific techniques, such as quick chilling and use of shakers.

69. CE employees were required to display particular materials provided by Kube, as well as any other materials required by Kube managers for particular events.

70. Kube required each CE employee to take a particularly-arranged photo of the employee "behind your neatly displayed table with all of the products displayed."

71. Kube imposed at least nine "display standards" to which CE employees were required to conform, addressing the colors, number of products displayed, arrangement of products on the table, the display of particular marketing materials, and including a prohibition on "clutter."

72. Kube provided CE employees with a litany "consumer engagement" guidelines, detailing techniques which CE employees were required to use in order to connect consumers

with promoted brands, including strict requirements for serving drinks and a prohibition on leaving the event table.

73. Kube required CE employees to use specific, multi-step techniques for closing sales to consumers.

74. Kube imposed upon CE employees a detailed procedure for closing events at their conclusion, including the requirement that the manager of the retail location in question sign an "event recap" memorializing bottles opened, time-in, time-out, and bottles sold.

75. At the conclusion of events, Kube required CE employees to submit event recaps, expense reports, and "a few quality photos" directly to Kube management.

76. CE employees were required to submit "online recaps" within 24 hours of the completion of an event. Submission of the "online recap" was a detailed five-step process, requiring submission of inventory, sale, sampling, price information, and other data concerning the event.

77. Kube's CE employee program was governed by a rigid 10-step flowchart, from initial application, qualification, onboarding, and training, through the scheduling of events, to payment.

78. Kube's CE employees were prohibited from cancelling events with less than 48 hours' notice, no-showing, or changing the time of an event without authorization from Kube's management.

79. CE employees were prohibited from conducting personal business during or after work shifts, and were explicitly prohibited from shopping at or patronizing the retailer in question while still in uniform after an event.

80. CE employees were prohibited from "arriving" at a work shift with "friends, spouse, boyfriends, etc."

81. CE employees were paid directly by Kube according to a negotiated hourly wage. Payment was made via direct deposit through a dedicated online payment portal known as "Payment On Demand." The "Payment on Demand" system did not withhold income or social security tax as required by law.

82. The potential penalties for a CE employee violating any of the above-referenced mandatory requirements included termination of the employment relationship.

83. CE training materials explicitly state: "Every time You Work a kube event You are @ Work. Your Attitude & Behavior Reflects that of Our Company, Our Suppliers & Valued Partners (*sic.*)."

### C. Shutdown and Nonpayment of Wages

84. Over the past several years, dating at least to 2010, Kube experienced multiple instances in which unknown payroll problems resulted in delays of payment to CE employees for hours worked (*i.e.* "payment push").

85. These incidents resulted in many occasions where CE employees were forced to wait weeks or even months for the payment of earned wages, and did not receive regular compensation as required by Illinois and federal law. These payroll issues ultimately came to a head in Spring, 2016.

86. On March 11, 2016, Kube, LLC's authorization to do business within the State of Illinois was revoked. Nevertheless, Kube continued to do business in Illinois until at least July 2, 2016.

87. On July 1, 2016, certain CE employees received an email from a Kube supervisor with the Subject Line "Thank You!". This email reported that "Kube Marketing will be closing down Illinois operations as of July 2, 2016" and promised that Kube would execute all final "invoices" and work to close outstanding "invoices" "over the next two weeks."

88. At the time of Kube's July 2, 2016 shutdown in Illinois, Kube's CE employees were owed hundreds of thousands of dollars in unpaid wages, and an additional amount in unreimbursed expenses. These back wages include, but are not limited to, the wages owed to the named Plaintiffs in this action, as detailed above.

89. Notably, in reference to these outstanding unpaid wages, the above-referenced July 1, 2016 email stated that: "I regretfully have to have to say that I will no longer be working with Kube, but that can always change in the future when things get back on track. This will then give a chance to catch up on billing and invoicing and not get further and further behind."

90. On information and belief, things did not "get back on track" for Kube.

91. On information and belief, Kube has not made any payments to CE employees since the July 2, 2016 shutdown.

92. To date, dozens of named Plaintiffs, and hundreds (if not thousands) of other Kube CE employees have been stiffed on thousands of dollars' worth of unpaid wages, payment of which is months overdue.

## FED. R. CIV. P. 23 ALLEGATIONS

93. Plaintiffs bring this Claim for Relief on behalf of themselves and a class of all those similarly situated, defined as follows:

> "All individuals who reside in the State of Illinois, and who worked for any amount of time as "Consumer Educators" directly for Kube, LLC within the previous ten (10) years prior to the date of the filing of this action, and were not compensated for some amount of such time worked. This class excludes any business entity subcontractors of Kube, LLC, and any employees or contractors thereof."

94. Upon information and belief, there are at least hundreds, if not thousands, of persons in the Class, such that joinder of all members is impracticable.

95. The named Plaintiffs will fairly and adequately represent and protect the interests of the Class members. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

96. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

97. The factual and legal bases of Defendants' liability to Plaintiffs and to the other members of the Class are the same, resulting in injury to the named Plaintiffs and to all of the other members of the Class as a result of Kube's refusal to pay the amounts owed to them. Plaintiffs and the other Class members have all suffered harm and damages as a result of Kube's breach of contract and violations of Illinois law.

98. The questions of law and fact relevant to this action are common to the claims of the named Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

 (a) Did Kube violate the IMWL by failing to pay any of the outstanding wages owed to them after July 2, 2016?

 (b) Did Kube violate the IWPCA by failing to pay any of the outstanding wages owed to them after July 2, 2016?

(c) Did Kube breach its contracts with the CE employees by failing to pay any of the outstanding wages owed to them after July 2, 2016?

99. The named Plaintiffs bring this action seeking recovery of their back pay, statutory damages, reasonable costs, and attorneys' fees in compensation for Kube's intentional theft of their earned wages.

**FIRST CLAIM FOR RELIEF**
**(Collective Action Under the Fair Labor Standard Act)**

100. Plaintiffs restate and reallege Paragraphs 1-99 of this Complaint as if fully stated herein.

101. 29 U.S.C. § 206(a)(1) states, in pertinent part: "... an employer must pay a minimum wage of $5.15/hr to an employee who is engaged in commerce..."

102. Defendants are "employers" as defined by 29 U.S.C. §203(d) because each acted directly or indirectly in the interest of Kube in relation to the CE employees.

103. On July 24, 2007, Federal minimum wage was raised to $5.85/hr. On July 24, 2008, Federal minimum wage was raised to $6.55/hr. On July 24, 2009, Federal minimum wage was raised to $7.25/hr.

104. The FLSA provides minimum standards that may be exceeded, but cannot be waived or reduced. Employers must comply, for example, with any Federal, State or municipal laws, regulations or ordinances establishing a higher minimum wage or lower maximum workweek than those established under the Act. 29 C.F.R. §541.4.

105. Because the CE employees were not paid any outstanding wages after July 2, 2016, leaving them entirely uncompensated for that outstanding time worked, Defendants violated 29 U.S.C. §201 *et seq.* and 29 C.F.R. § 516.2 in that Plaintiffs were not properly paid all their minimum wages (or any wages at all) for the outstanding time.

106. Defendants also violated 29 U.S.C. §201 *et seq*. and 29 C.F.R. § 516.2 in that they paid no wages to Plaintiffs for mandatory preparation time worked prior to assigned events.

107. Plaintiffs bring this claim as an opt-in collective action seeking back pay, costs, and reasonable attorneys' fees in redress for Defendants' wage theft.

108. Because Defendants had actual knowledge of and/or showed reckless disregard towards their obligation to meet federal minimum wage standards, Plaintiffs are also entitled to an additional amount as liquidated damages, equal to the amount outstanding in back-pay.

## SECOND CLAIM FOR RELIEF
### (Class Action Under the Illinois Minimum Wage Law)

109. Plaintiffs restate and reallege Paragraphs 1-99 of this Complaint as if fully stated herein.

110. The Illinois Minimum Wage Law, 820 ILCS 105/12(a), states, in pertinent part: "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid."

111. The current minimum wage in Illinois is $8.25 per hour.

112. Because Defendants have paid no money at all to CE employees as compensation for hours worked that were still outstanding at the time of the July 2, 2016 shutdown, Defendants have violated the IMWL.

113. Defendants also violated the IMWL in that they paid no wages to Plaintiffs for mandatory preparation time worked prior to assigned events.

114. In redress for Defendants' theft of their unpaid wages, pursuant to the IMWL, Plaintiffs, on behalf of themselves and a class of all those similarly situated, seek the entire amount of their outstanding back pay, together with costs, reasonable attorneys' fees, and damages equal to 2% of the amount of the outstanding back pay for each Plaintiff, for each month following the incurring of the outstanding unpaid wages.

**THIRD CLAIM FOR RELEIF**
**(Class Action Under the Illinois Wage Payment and Collection Act)**

115. Plaintiffs restate and reallege Paragraphs 1-99 of this Complaint as if fully stated herein.

116. Under the IWPCA, 820 ILCS 115/5, "Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

117. The IWPCA, 820 ILCS 115/14, states, in pertinent part: "[a]ny employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

118. Defendants have, to date, failed to pay any final compensation for the outstanding wages they owe Plaintiffs since the shutdown on July 2, 2016.

119. In redress for Defendants' theft of their unpaid wages, pursuant to the IWPCA, Plaintiffs seek the entire amount of their outstanding back pay, together with costs, reasonable

attorneys' fees, and damages equal to 2% of the amount of the outstanding back pay for each Plaintiff, for each month following the incurring of the outstanding unpaid wages.

## FOURTH CLAIM FOR RELIEF
### (Class Action Breach of Contract)

120. Plaintiffs restate and reallege Paragraphs 1-99 of this Complaint as if fully stated herein.

121. On information and belief, prior to his or her employment, each Kube CE employee submitted an application that, when accepted, constituted a written, part-time employment contract for payment of wages at a particular hourly rate.

122. On information and belief, these terms of employment were so substantially similar to each other that any required differences in treatment between similarly situated class members are merely ministerial.

123. By failing to timely pay earned wages owed to the named Plaintiffs and the Class, as described herein, Kube intentionally breached its contracts with its CE employees.

124. Plaintiffs and the Class seek damages for Defendants' breach, in the form of back pay for their uncompensated hours worked, at their respective contracted rates of pay.

WHEREFORE, Plaintiffs, by and through their attorneys, respectfully pray for the following relief:

    A. Entry of judgment for Plaintiffs and others similarly situated and against Defendants on the basis of the Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. and other Federal Regulations;

    B. An award of actual damages in the amount shown to be due for unpaid wages;

    C. An award of an equal amount in liquidated damages;

D. An award of statutory penalties as allowed by the IMWL and the IWPCA;

E. Interest on all amounts awarded;

F. An award of reasonable attorneys' fees and costs of suit; and

G. Any other relief the Court deems just.

PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully Submitted,

s/ James P. Batson

James P. Batson
*One of Plaintiffs' Attorneys*

**LANGONE, BATSON & LAVERY, LLC**
17 North Wabash Avenue, Suite 500
Chicago, IL 60602
(914) 523-2278
jbatson@langonebatson.com

Christopher V. Langone
LANGONE, BATSON & LAVERY, LLC
17 North Wabash Avenue, Suite 500
Chicago, IL 60602
(312) 720-9191
clangone@langonebatson.com